## PEOPLE OF THE STATE OF CALIFORNIA *ex rel.* HASTINGS *v.* JACKSON & Another.

IN ERROR TO THE SUPREME COURT OF CALIFORNIA.

Submitted October 31, 1884.—Decided November 17, 1884.

This court has no jurisdiction over the decision and judgment of a State court upon adverse claims to real estate made under a common grantor whose title was derived from the United States and is not in dispute. *Romie* v. *Casanova*, 91 U. S. 379, and *McStay* v. *Friedman*, 92 U. S. 723, affirmed.

This was a suit brought by the State of California, at the instance of S. C. Hastings, to set aside a patent of the State granting the south half of sec. 14, T. 5 N., R. 1 W., to A. P. Jackson. The lands were part of the 500,000 acres which went to California on its admission into the Union, September 9, 1850 (9 Stat. 452, ch. 50), under the provisions of the act of September 1, 1841, ch. 16, § 8, 5 Stat. 455. By that act the lands granted were to be selected by the State in such manner as the legislature thereof should direct, and by the Constitution of California (Art. IX., sec. 2) they were devoted to the support of schools. The legislature of California, by an act passed May 3, 1852, ch. 4, Acts of Cal. 1852, 41, authorized the governor to issue land warrants to the amount of five hundred thousand acres in all and deposit them with the Treasurer of State. These warrants were to be sold by the treasurer at two dollars per acre, and the interest of the proceeds was set apart "as a permanent fund for the support of schools." The purchasers were authorized to locate their warrants in behalf of the State "upon any vacant and unappropriated lands belonging to the United States within the State of California subject to such location." Provision was then made for the issue of patents to locators by the State as soon as the lands were surveyed.

The material averments in the complaint filed by the State were that one Isaac Thomas located a school warrant on the lands in question on the 20th of June, 1853; that, as the government surveys had not then been made, the lines of the

location were run by the county surveyor, and a correct entry thereof made in the office of the county clerk; that the government surveys were completed and plats thereof filed in the General Land Office on the 1st of October, 1853; that on the 24th of December, 1853, Thomas presented his location to the register of the United States land district in which the lands were situated; that the register accepted and approved the location; that afterwards Thomas filed with the register the warrant under which his location was made; that the register wrote the word "surrendered" across the face of the warrant and gave to Thomas a certificate setting forth these facts; that Hastings has been duly invested with all the rights of Thomas under his location; that on the 14th of February, 1857, Jackson, one of the defendants, with full knowledge of all that had been done by Thomas, located other warrants on the same land, and, on the 18th of March, 1863, procured a certificate to that effect from the Land Office of the United States, under which a patent was issued to him by the State; that the lands were "listed" to the State by the United States on the 10th of February, 1870; and that on the 8th of September, 1871, the Commissioner of the General Land Office cancelled the location of Jackson, and returned to him the warrants which had been used in making that location.

The prayer was "that the said defendants be decreed to deliver up the said patent to be cancelled, and that they and each of them, and every person claiming by, through, or under them, or either of them, be perpetually enjoined and restrained from setting up any claim or title to the said premises under and by virtue of said alleged patent," and for general relief.

The defendants demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action, in this:

"The performance of the acts stated in the complaint did not make valid selection of the premises mentioned in the complaint, under said school land warrant No. 133. No valid location of said warrant is shown, nor any valid selections of land under it.

"The allegations in the complaint as to the effect of the pre-

tended locations and the rights of I. Thomas and S. C. Hastings are mere conclusions of law and not allegations of facts.

"The complaint shows upon its face that this action is barred by the statute of limitation of this State.

"The facts stated show that defendant, Jackson, was entitled to the patent when it was issued to him."

The court of original jurisdiction sustained the demurrer and dismissed the complaint, and that judgment was affirmed by the Supreme Court of the State on appeal. This writ of error was brought to reverse the judgment of the Supreme Court.

*Mr. John Norton Pomeroy* for plaintiff in error, as to the question of jurisdiction.—The Supreme Court of the United States has an appellate jurisdiction of this case. It is properly before this court on writ of error to the Supreme Court of California. The decision of the case necessarily involves, and the record clearly presents, a "federal question," which the court below necessarily passed upon adversely to the plaintiff in error. The title or right of the plaintiff in error in this case is claimed under a statute or statutes of the United States, and the decision of the court below is against such right and title. Rev. Stat. § 709. The title of the plaintiff in error and of the relator is claimed under the act of Congress of July 23, 1866, the act of Congress granting 500,000 acres to the State, and acts of Congress regulating the public lands, &c., and the decision of the State court is necessarily adverse to such claim. All this sufficiently and necessarily appears on the record itself. It is not necessary to state in terms that the law was drawn in question. *Williams* v. *Norris*, 12 Wheat. 117; *Montgomery* v. *Hernandez*, 12 Wheat. 129; *Ryan* v. *Thomas*, 4 Wall. 603; *Furman* v. *Nichol*, 8 Wall. 44; *Willson* v. *Black Bird Creek Marsh Co.*, 2 Pet. 245; *Farney* v. *Towle*, 1 Black, 350. The fact that other questions were also involved, growing out of State laws, does not destroy this appellate jurisdiction, if the case shows that a federal question was involved. *Maguire* v. *Tyler*, 8 Wall. 650; *Minnesota* v. *Bachelder*, 1 Wall. 109. See Desty's Federal Procedure, 333, and cases cited.

*Mr. M. A. Wheaton* for defendant in error.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

The first question which presents itself on this record is as to our jurisdiction.. The suit, although in form by the State to cancel its patent to Jackson, was in reality between Hastings and Jackson to determine which of the two had in equity the better right to the land in controversy by reason of the locations of school warrants under which they respectively claimed. There was no dispute about the grant from the United States to the State. That was conceded, and both parties claimed under it. The controversy related only to the alleged conflicting grants of the State. Hastings claimed that Thomas, whose title he had, was the first locator, and, therefore, under the legislation of the State, in equity the first grantee of the State, while Jackson claimed that the Thomas location was invalid, and that consequently his own title was the best. Both parties thus claimed under the State, and neither asserted title from the United States except through the State.

It is indeed averred in the complaint that the location of Thomas was accepted and approved by the register of the United States Land Office, and that Jackson also obtained a like certificate, which was afterwards cancelled by the Commissioner of the General Land Office, but it is not pretended that either of these things was done by the government officials under the authority of the law of the United States. The act of 1841 provided for a grant by the United States of lands to be selected by the State in such manner as the legislature should direct, and the legislature did, by the act of 1852, in effect, direct that a location of warrants by the holder should operate as a selection by the State of the particular tract located as part of the lands granted. That perfected the right of the State to the land under the act of Congress, but gave the locator no rights as against the United States. By the express provisions of the State statute, under which he proceeded, his location was to be made "in behalf of the State," and he was to look to the State for his patent. What was done by the officers of the United States only showed that the State

had, through a holder of one of its school warrants, made a selection of the particular tract located as part of the lands granted by the act of 1841.  This gave the State a right to the title under the act of Congress, but the warrant holder's claim on the State for a conveyance of the land to him grew out of the State statute, and not out of the certificate of the United States officials.

Under these circumstances, the case is clearly governed by *Romie* v. *Casanova*, 91 U. S. 379, and *McStay* v. *Friedman*, 92 U. S. 723, in which it was decided that in a suit for the recovery of lands, where both parties claimed under a common grantor whose title from the United States was admitted, this court had no jurisdiction for the review of the decisions of a State court upon questions relating only to the title acquired by the several parties, under their respective grants, from the common grantor, and which were not in themselves of a federal character.

Some reliance was had in the argument on the act of Congress approved July 23, 1866, ch. 219, 14 Stat. 218, "to quiet land titles in California," but that act was not referred to in the complaint, and, besides, it purports only to confirm the title of the State, which, in this case, is perfect without it.  No attempt is made in that act to provide for the settlement of the rights of conflicting claimants under the State.  Congress contented itself with the confirmation of the State's title, and left all who claimed under that title to their remedies in the courts or other tribunals provided by law for that purpose.

It follows that we have no jurisdiction of this case, and it is accordingly

*Dismissed.*